**UNITED STATES FIDELITY AND GUARANTY COMPANY, Plaintiff,**

v.

**Janet TRUSSELL et al., Defendants. Civ. A. No. 1168.**

United States District Court
W. D. Virginia,
Roanoke Division.
Aug. 13, 1962.

Robert E. Glenn, of Eggleston, Holton, Butler & Glenn, Roanoke, Va., for U. S. Fidelity & Guaranty Co.

Bentley Hite, Christiansburg, Va., for Janet Trussell and Thomas Trussell.

John H. Locke, of Gentry, Locke & Rokes, Roanoke, Va., for Thomas S. Brookfield, Southern Houseware Service, Inc., and Lumbermens Mutual Casualty Co.

Carroll D. Rea and Geo. Scott Shackleford, Jr., of Hazlegrove, Shackleford & Carr, Roanoke, Va., for Radford Auto Exchange, Inc.

W. H. Jolly, of Kime & Jolly, Salem, Va., for Harleysville Mutual Casualty Co.

A. M. Harman, Jr., Pulaski, Va., and Howard C. Gilmer, Jr., of Gilmer, Harman & Sadler, Pulaski, Va., for Home Finance Co. of Pulaski and Travelers Ins. Co.

William B. Poff of Woods, Rogers, Muse & Walker, Roanoke, Va., for Clinton Kanode, Charles Sayers, T/A Kanode Motor & Fidelity & Casualty Co. of N. Y.

DALTON, Chief Judge.

This declaratory judgment action was heard on a stipulation of facts agreed to by all parties involved. Essentially, the controversy arises out of a series of transactions relating to a 1955 Chevrolet Sedan, which allegedly became involved in an accident on December 30, 1960, while being driven by one of the defendants, Thomas Trussell. In that accident Thomas Brookfield, another of the defendants, allegedly sustained serious personal injuries for which he has instituted an action in the Circuit Court of Montgomery County, Virginia, against Thomas Trussell, which action is set for trial in October, 1962.

The issue before this Court is the determination of which of the parties involved in this suit shall be responsible in whole or in part for any liability incurred by Thomas Trussell as a result of the alleged accident.

The facts of the case are as follows:

During the month of May, 1960, Radford Auto Exchange, Inc., one of the defendants, purchased a 1955 Chevrolet Sedan from Kenny Ross Chevrolet, Inc., in Pittsburgh, Pennsylvania. A Commonwealth of Pennsylvania certificate of title to this automobile was assigned and delivered from Kenny Ross Chevrolet, Inc., to Radford Auto Exchange, Inc. An agent of Radford Auto Exchange took possession of the automobile in Pittsburgh, the place of transfer, and brought the vehicle to the place of business of Radford Auto Exchange in Montgomery County, Virginia.

On or about May 24, 1960, Radford Auto Exchange undertook to sell the 1955 Chevrolet to Eugene B. Bowman under a conditional sales contract. A Reassignment by the Registered Dealer was executed by Radford Auto Exchange to Eugene B. Bowman, and Bowman executed an application for certificate of title. These papers were never forwarded to the Division of Motor Vehicles of the Commonwealth of Virginia, but at some time subsequent, probably during June, 1960, the papers, including the Pennsylvania title, were delivered to Bowman. The conditional sales contract was for value received assigned by Radford Auto Exchange to Home Finance Company, a finance company of Pulaski, Virginia, engaged, among other things, in financing automobiles.

Bowman defaulted on his payments on the automobile, and the automobile was repossessed from him by agents of Home Finance Company who took possession of the car with the consent of Bowman in Winston-Salem, North Carolina. At the time of taking possession of the automobile, the agents of Home Finance Company obtained from Eugene Bowman his signature on a Release and Request for Private Sale and a Power of Attorney. Bowman advised the agents of Home Finance Company that the title papers were at his home and that they might obtain them from his wife. The agents of Home Finance Company went to the Bowman home in Winston-Salem, North Carolina, where Mrs. Bowman searched for the papers but was unable to locate them. This repossession took place on November 23, 1960. The title papers were not obtained from Bowman until some time after January 20, 1961, well after the accident.

The automobile, upon repossession, was returned to the lot of Home Finance Company in Pulaski, Virginia, where it was stored for a short period. During the early part of December, 1960, the 1955 Chevrolet was delivered by Home Finance Company to Kanode Motor Company, a party defendant, in Blacksburg, Virginia, for the purpose of resale. No title papers to the car had been acquired by Home Finance at that time, and consequently none were delivered to Kanode Motor Company with the car.

On December 17, 1960, Kanode Motor Company agreed to sell and Thomas Trussell agreed to purchase the Chevrolet Sedan. As a part of this transaction, Thomas Trussell delivered to Kanode Motor Company a 1947 Pontiac registered in the name of Janet Trussell, his daughter. Thomas Trussell and Janet Trussell resided in the same household. A form bill of sale was completed by Kanode Motor Company setting forth the terms of the transaction and stating that the car was "Sold to Thomas Trussell". License plates on the 1947 Pontiac were transferred to the 1955 Chevrolet and a receipt was issued by Kanote Motor Company to Thomas and Janet Trussell for the transfer fee. The title papers to the Pontiac were not delivered to Kanode Motor Company, and, of course, no title papers were delivered by Kanode to Trussell since Kanode had none to deliver. However, on December 21, 1960, Home Finance Company received a check for $325.00 and conditional sales papers on the Chevrolet from Kanode Motor Company.

Thomas Trussell obtained possession of the 1955 Chevrolet on December 17, 1960, and was in possession on December 30, 1960. On that date he was operating the 1955 Chevrolet on his way to work at the Radford Arsenal near Radford, Virginia, when he was allegedly involved in an accident wherein Thomas Brookfield, a party defendant in this suit, allegedly sustained serious personal injuries which he alleges to have been caused by the negligence of Thomas Trussell in his operation of the 1955 Chevrolet. At the time of this accident the title papers of the 1955 Chevrolet were still in the possession of Eugene Bowman in Winston-Salem, North Carolina, and at the time no title papers for the vehicle had been filed or registered with the Virginia Division of Motor Vehicles.

Thomas Trussell, some time on or after December 19, 1960, and on or before January 6, 1961, requested the agent of United States Fidelity and Guaranty Company, Leonard L. Brown Insurance Agency, Blacksburg, Virginia, to endorse United States Fidelity and Guaranty Company's policy of insurance to show a change of vehicles. For the purposes of this opinion it is not necessary to determine the exact date that such a request was made, but the evidence of Mrs. Hill, an employee of the Brown Insurance Agency, fixes the date of the request as January 6, 1961, which the Court adopts as the best evidence of the date requesting a transfer of the policy. It is known for certain that on January 6, 1961, United States Fidelity and Guaranty Company issued a "Change in Automobile Policy Endorsement" to a policy which it had issued to Janet Trussell on the 1947 Pontiac, transferring the insurance to the 1955 Chevrolet Sedan.

During the latter part of the month of January, 1961, Home Finance Company obtained the title papers from Eugene Bowman and delivered them to Kanode Motor Company. A Reassignment by Registered Dealer, signed in blank by Radford Auto Exchange, was delivered to Charles Sayers, Kanode Motor Company, during January, 1961. This document, executed at the request of Mr. Sayers, one of the owners of Kanode Motor Company, who was concerned with straightening out the "sale" to Thomas Trussell, was the second of its kind issued by Radford Auto Exchange, the first having been made out to Eugene Bowman. The issuance of such a second Reassignment by Registered Dealer was of course illegal. Sayers filled in the form showing transfer to Kanode Motor Company inserting and using the date of December 10, 1960. A Reassignment by Registered Dealer was then executed by Kanode Motor Company to Janet Trussell and all of these papers together with the Pennsylvania registration papers were received by the Division of Motor Vehicles on February 6, 1961.

The plaintiff herein, the United States Fidelity and Guaranty Company, insured Janet Trussell under a family automobile liability policy with the following coverages which are pertinent to this con-

troversy: Bodily injury liability, $15,-000 each person and $30,000 each occurrence; property damage liability, $5,-000 each occurrence.

Defendants Clinton Kanode and Charles Sayers, partners trading as Kanode Motor Company, are insured under an "Automobile Dealer and Repair Shop, Storage Garage and Service Station Policy" issued by the defendant, The Fidelity and Casualty Company of New York. The pertinent coverages are bodily injury liability, $50,000 each person and $100,000 each accident; property damage liability, $10,000 each accident.

Defendant Home Finance Company is insured by a "Comprehensive Automobile Liability Policy" issued by The Travelers Insurance Company. The coverages being: bodily injury liability, $500,000 each person and $1,000,000 each accident; property damage liability, $25,000 each accident.

Defendant Southern Houseware Service, Incorporated, employed Thomas Brookfield and suffered property damage in the alleged accident.

Defendant Lumbermens Mutual Casualty Company provided workmen's compensation insurance coverage for Southern Houseware Service, Incorporated, as of December 30, 1960, and has filed a lien notice for the benefits paid to Brookfield.

The Harleysville Mutual Insurance Company, a defendant, provided liability and uninsured motorist coverage for the vehicle which Brookfield was operating at the time of the accident giving rise to this controversy. In view of the determination by this opinion that there was other insurance coverage, no liability attaches to Harleysville and therefore it will be dismissed.

Out of this complex factual development, three questions emerge for serious consideration by this Court:

(1) First, the question of The Travelers Insurance Company's liability under their "Comprehensive Automobile Liability Policy" issued to Home Finance Company.

(2) Second, the question of the liability of The Fidelity and Casualty Company of New York under their "Garage" policy issued to Kanode Motor Company.

(3) And third, the question of the liability of the United States Fidelity and Guaranty Company under their family automobile liability policy issued to Janet Trussell.

Before taking these questions up, it should be noted that motions for summary judgment were granted to Radford Auto Exchange, Home Finance Company, and Clinton Kanode and Charles Sayers, trading as Kanode Motor Company. It seems clear that Thomas Trussell was not operating the 1955 Chevrolet as an agent or servant of any of these defendants at the time of the accident, and therefore there can be no question of the personal liability of these defendants.

■ Likewise, The Travelers Insurance Company was dismissed only insofar as it extended liability coverage to Radford Auto Exchange. Since Radford Auto Exchange had completely divested itself of all indicia of ownership, including certificate of title to the Chevrolet, and, since the car could not therefore be considered as being used in connection with Radford Auto Exchange's automobile business, it would appear that Traveler's policy issued to Radford Auto had no applicability in this situation. This Court does not believe that Radford Auto's action in issuing a second Reassignment by Registered Dealer in blank would attach any liability on either Radford Auto Exchange or The Travelers Insurance Company in this action.

*Virginia's Registration Laws*

■ Before undertaking a discussion of the three crucial questions involved here, a word should be said relating to the automobile registration laws of the State of Virginia. Obviously, a fundamental purpose of Virginia's registration laws is to prevent the sale of stolen

or other unregistered vehicles in this State (see 11 Va.L.Rev. 75 (1924). The importance of registration is mentioned in Sauls v. Thomas Andrews & Co., 163 Va. 407, 175 S.E. 760, at p. 763 (1934):

> "The mobile character of property of this kind makes registration of title and uniformity of registration doubly important. * * * These statutes governing registration are essentially police regulations, and must be observed. * * *"

Quite true, the registration laws of Virginia, dealing with transfer of certificate of title, refer to vehicles "registered under the provisions of this chapter." See for example, Va.Code Ann. § 46.1-87 (Supp.1950). Thus, Travelers argues that Virginia's statutory requirements do not apply to this case at all, leaving only the law of sales relevant to the various transactions. However, this contention the Court cannot accept. An automobile, by its characteristics, was not intended to be handled by bill of sale in Virginia. To follow the general law of sales to ascertain ownership of automobiles would be contrary to the intent of Virginia's registration laws, and would create confusion, uncertainty and endless difficulties.

The 1955 Chevrolet was brought into Virginia in May of 1960, and was never registered under Virginia law until after the accident of December 30, 1960. From that time until the accident on December 30, 1960, the car was transferred by companies operating in Virginia under the laws of Virginia. To say that Virginia title law, passed specifically to effectively regulate the transfer of automobiles, could be avoided altogether by simply failing to ever register the automobile would seem to fly directly in the face of the clear purpose of the statute. We conclude, therefore, that Virginia's automobile title laws are applicable in this case even though the Chevrolet was not registered in this State until after the accident in question.

I. *The Travelers Insurance Company*

We will now consider the question of The Travelers Insurance Company's liability under their policy issued to Home Finance Company: The policy provides that liability coverage extends to "any person while using an owned automobile * * * provided the actual use is by the named insured or with his permission." With respect to ownership of an automobile, the Virginia courts have taken a very strict view regarding the effect of noncompliance with State registration statutes on legal ownership. In Nationwide Insurance Company v. Storm, 200 Va. 526, 106 S.E.2d 588 (1959) the Supreme Court of Appeals of Virginia quoted with approval from the leading Ohio decision of Garlick v. McFarland, 159 Ohio St. 539, 113 N.E.2d 92, at p. 93 (1953):

> "Where an automobile is sold by the owner with full payment of the agreed price and delivery of possession to the purchaser thereof but the assignment and delivery of the certificate of title are deferred, a change in the ownership of the automobile is not consummated. * * *"

See also United States Fidelity & Guaranty Corp. v. Myers Motors, D.C., 143 F.Supp. 96 (1956); United States v. One Hudson Hornet Sedan, D.C., 110 F.Supp. 41 (1953); Sauls v. Thomas Andrews & Co., supra; Thomas v. Mullins, 153 Va. 383, 149 S.E. 494 (1929).

Therefore, in most cases compliance with § 46.1-87 of the Code of Virginia (1950), as amended, et seq., is required in order to transfer ownership of an automobile in the State of Virginia. Home Finance, upon repossessing the Chevrolet from Eugene Bowman, did not so comply since the title papers properly endorsed were not obtained along with the car.

Yet it is possible under the Virginia statute to acquire legal ownership by operation of law. § 46.1-93 of the Code of Virginia (1950), as amended, provides in part:

> "*Transfer by operation of law.—* * * * *in the event of the transfer by operation of law* of the title or interest of an owner in and to a

motor vehicle \* \* \* registered under the provisions of this chapter, *to anyone \* \* \* by \* \* \* repossession upon default in the performing of the terms of a(n) \* \* \* executory sales contract or otherwise than by the voluntary act of the person whose title \* \* \* is so transferred,* the transferee or his legal representative shall make application to the Division for a certificate of title therefor, giving the name and address of the person entitled thereto, and accompany such application with the registration card and certificate of title previously issued for the motor vehicle, \* \* \* *if available,* together with such instruments or documents of authority, or certified copies thereof, as are required by law to evidence or effect a transfer of title or interest in or to chattels in such case. The Division when satisfied of the genuineness and regularity of the transfer shall cancel the registration of the motor vehicle \* \* \* and issue a new certificate of title to the persons entitled thereto." (Emphasis added)

Regarding the unavailability of the title papers, § 46.1–92 of the Code of Virginia (1950), as amended, is relevant, providing:

"Transfer when certificate of title lost, etc.—Whenever the applicant for the registration of a motor vehicle, trailer or semitrailer or a new certificate of title thereto is unable to present a certificate of title by reason of the same being lost or unlawfully detained by one in possession or whenever such certificate of title is otherwise not available, the Division may receive the application and examine into the circumstances of the case and may require the filing of affidavits or other information. When the Division is satisfied that the applicant is entitled thereto it may register the motor vehicle, trailer or semitrailer and issue a new registration card, license plate or plates and certificate of title to the person entitled thereto."

Since the conditional sales contract had been assigned to Home Finance and since Home Finance obtained a power of attorney from Bowman authorizing a change of title, it seems a fair interpretation of these two statutes to conclude that Home Finance automatically acquired title to the Chevrolet by operation of law when it repossessed the car. The fact that Home Finance failed to send in the proper papers to the Division of Motor Vehicles does not alter the fact that under § 46.1–93 a transfer of ownership was consummated by operation of law at the time the repossession took place.

In Eureka-Security Fire & Marine Insurance Company v. Maxwell, 276 F.2d 132 (4th Cir.1960), the Court of Appeals held that title by operation of law was not acquired where the original vendor, after assigning the conditional sales contract to a bank, repossessed an automobile from a defaulting vendee without first getting a reassignment of the sales contract from the bank. In the present case the conditional sales contract was owned by the repossessor, Home Finance Company, thus distinguishing the Eureka situation and placing the transaction squarely within the meaning of § 46.1–93. With the power of attorney from Bowman, Home Finance Company acquired sole interest in the Chevrolet and became the owner by operation of law under the Virginia statute.

Having concluded (1) that Home Finance owned the automobile in question at the time of the accident, we must decide (2) whether Thomas Trussell was operating the car with Home's permission in connection with the repossession and resale at the time of the accident in order to fix liability on Travelers Insurance Company.

■ § 38.1–381 of the Code of Virginia (1950), as amended, requires that an "omnibus clause" be included in all insurance policies issued in Virginia. Under this statute if a person is driving with the express or implied permission

of the owner, he becomes an insured under the contract. The courts have interpreted the permission requirement liberally to effectuate the public policy of giving coverage to the injured party: Utica Mutual Insurance Company v. Rollason, 246 F.2d 105 (4th Cir.1957); Fidelity & Casualty Co. of New York v. Harlow, 191 Va. 64, 59 S.E.2d 872 (1950). It has been established that the owner need not know the identity of the person operating the car with his implied permission. American Automobile Insurance Co. v. Fulcher, 201 F.2d 751, 757 (4th Cir.1953).

■ When Home Finance Company placed the Chevrolet on Kanode's lot, it gave permission to Kanode to use the car to promote sale of the vehicle and implied permission to anyone with whom Kanode placed it in Kanode's efforts to effectuate the sale.

Since the transaction from Kanode to Trussell had not been consummated at the time of the accident, we conclude that Trussell was driving with the implied permission of Home Finance Company, and that The Travelers Insurance Company is therefore responsible for any liability incurred by Trussell, subject of course to the "Other Insurance" provision in their policy, which provides for prorating the liability among all primary insurers, said provision reading as follows:

"*Other Insurance.* If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declaration bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

■ Even if all the transactions involving the automobile were void and none of the parties to this action actually owned the automobile at the time of the accident, then Travelers would still provide coverage because its "repossessed automobiles" endorsement provides *owned automobile* coverage "to any automobile while being repossessed * * * or while being maintained or used in connection with resale following such repossession" * * * Thus, Travelers would in this instance provide coverage regardless of whether legal ownership was in Home Finance as of the date of the accident.

## II. *Fidelity and Casualty Company of New York*

Considering next the liability of The Fidelity and Casualty Company of New York under their "Garage" policy issued to Kanode Motor Company, it is conceded by all parties that Kanode never had legal ownership of the Chevrolet prior to the accident. But under the "Garage" policy involved here, ownership is not a prerequisite to coverage. Under Definitions of Hazards the policy states:

"*Division 1. Premises—Operations —Automobiles*

"The ownership, maintenance or use of the premises for the purpose of an *automobile sales agency,* repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the *ownership, maintenance or use of any automobile in connection with the* above defined operations." * * * (emphasis added)

Under this provision it is further required that the automobile be used with the permission of the named insured.

There is no question that Thomas Trussell had the express permission of Kanode Motor Company to operate the 1955 Chevrolet at the time of the accident. The real issue, then, is whether Trussell's use of the non-owned automobile was *in connection with the sales operations of Kanode Motor Company.*

The Court believes the Ohio case of Brewer v. Decant; Universal Underwriters Insurance Company, 167 Ohio St. 411, 149 N.E.2d 166 (1958) to be controlling on this issue. It should be noted at the outset that the Ohio registration statutes are very similar to Virginia's. See Nationwide Insurance Co. v. Storm, supra. The facts of the Brewer decision are strikingly similar to the case at bar. There an auto dealer named Gingrich sold a car to one Armitage, obtaining a chattel mortgage executed in favor of a finance company to secure payment, and gave Armitage possession of the car and an endorsed certificate of title. When Armitage defaulted on his payments, the finance company repossessed the automobile *without obtaining the title papers from Armitage.* The finance company put the car back on the original seller's lot for resale, and Gingrich "sold" the car to DeCant. In return for possession of the car, DeCant traded Gingrich his old car, gave a mortgage on the new car, and executed a power of attorney authorizing Gingrich to get title for DeCant. Of course Gingrich did not have proper title at the time of the "sale" since all title papers were still in Armitage's possession. Shortly after this transaction DeCant had an accident, and it was claimed that he was operating a non-owned (by Gingrich) automobile *in connection with Gingrich's sales business.* The policy provisions, like the facts, are almost identical to those of the case at bar. The Supreme Court of Ohio held that Gingrich's insurer was liable on the policy, reasoning that since a certificate of title had not been issued to DeCant, ownership had not passed to him, the sale had not been consummated, and hence *DeCant's operation of the car was in connection with Gingrich's sales business.* Regarding Gingrich's continuing interest in the situation, the court said at pp. 413–414 of 167 Ohio St., at p. 168 of 149 N.E.2d:

"To say that Gingrich undertook the resale of this car as a courtesy to the finance company alone and without any thought for the furtherance of its own business is to blink one's eyes at the reality of the situation. We are of the opinion, therefore, that the automobile and its use were clearly within the definition of the hazards covered by the policy."

See also United States Fidelity & Guaranty Corp. v. Myers Motors, supra. It is apparent in the case at bar that Kanode Motor Company did not consider the transaction consummated at the time the car was delivered to Trussell, since long after the "sale" Kanode induced Radford Auto Exchange to execute a second assignment by Registered Dealer for the purpose of getting the title to the Chevrolet straightened out.

The cases cited by counsel for The Fidelity and Casualty Company of New York do not succeed in overcoming the persuasiveness of this case.

■ We therefore hold in line with the Brewer case that the 1955 Chevrolet was at the time of the accident a non-owned automobile being operated with the permission of Kanode Motor Company in connection with and incidental to the garage operations of Kanode Motor Company because of the fact that legal ownership had not yet passed to Thomas Trussell. Kanode Motor Company was, in order to conclude the sale with Thomas Trussell, permitting him to use the automobile until legal title could be obtained and transferred to Trussell.

The Court finds, therefore, that The Fidelity and Casualty Company of New York has coverage for any liability incurred by Thomas Trussell as a result of the alleged accident of December 30, 1960, which liability is, of course, subject to the pro rata provisions of the "Other Insurance" clause of the policy.

### III. *United States Fidelity and Guaranty Company*

We turn now to a consideration of the liability of United States Fidelity and Guaranty Company under their family liability policy issued to Janet Trussell. It is the contention of United States Fidelity and Guaranty Company that

they insured a 1947 Pontiac under a policy that provided for liability coverage only for accidents "arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile * * *." Regarding liability related to the ownership, maintenance or use of the "owned automobile", there is an additional clause found under "Conditions" which is relevant:

"2. *Premium.* If the Named Insured disposes of, *acquires ownership of or replaces* a private passenger, farm or utility automobile * * *, he shall *inform* the Company *during the policy period of such change.* Any premium *adjustment* necessary *shall be made as of the date of such change* in accordance with the manuals in use by the Company. The Named Insured shall, upon request, furnish reasonable proof of the number of such automobiles or trailers and a description thereof." (emphasis added)

█ Although the Court finds that neither Thomas Trussell or Janet Trussell was the legal owner of the automobile in question at the time of the accident, the Court is of the opinion that because of the alternative phraseology, "acquires ownership of *or* replaces", there is no requirement of ownership of a *replacement* automobile (which the Chevrolet unquestionably was), and thus there was coverage on the replacement vehicle. The purpose of the alternative phraseology is to afford protection from the "earliest time he needs protection".

The Virginia law is announced in the case of Maryland Casualty Company v. Toney, 178 Va. 196, 16 S.E.2d 340 (1941). The court in that case stated:

"It will be observed that this clause is expressed in the broadest terms and is for the benefit of the insured. The policy provides coverage to the owner of the insured automobile whenever he 'acquires ownership of another automobile,' and such insurance applies 'to such

other automobile as of the date of its delivery to him.' The insured is afforded protection from the earliest time he needs protection—that is, from the time the new car is delivered to him. *Protection is not delayed until ownership is complete in the insured or until the title is registered in his name,* or even until the newly acquired car is placed in service. From the time of the delivery of the car to the insured—that is, from the time he takes possession of it—he is protected by the policy." (Emphasis supplied.) 178 Va. 196, 202, 16 S.E.2d 340, 343.

Although the above language was admitted dicta, the Court believes that this is an accurate pronouncement of the law of this State which would be applied by the Virginia Supreme Court of Appeals to an interpretation of the plaintiff's insurance policy as applied to the facts of this case.

It is to be noted that United States Fidelity issued a change in policy endorsement, shifting coverage from the 1947 Pontiac to the 1955 Chevrolet on January 6, 1961, and thus accepted whatever responsibility Janet Trussell had at that time. The degree of ownership on December 30, 1960, the day of the accident, and on January 6, 1961, was exactly the same.

United States Fidelity and Guaranty Company, by its agent, readily made the transfer of coverage from the Pontiac to the Chevrolet, and the Agent's secretary, Mrs. Hill, testified that the transfer of coverage would have been made even if they had known of the accident of December 30, 1961. It would be a fair inference to draw that United States Fidelity and Guaranty Company, through its agent, recognized the fact that the Pontiac was being *replaced* by the Chevrolet, and that it was the intention of the parties for the replacement vehicle to be covered from the moment the switch in vehicles was made, and the company, by its acts, is estopped to contend otherwise.

Counsel for United States Fidelity and Guaranty argue that since its policy was issued to Janet Trussell that *replacement* must be by the named insured. Yet the agent for United States Fidelity and Guaranty Company knew that the relationship of the Trussells was that of father and daughter; that the Trussells were not buying a second automobile; that the Pontiac was in the process of being traded for the Chevrolet; and that the Chevrolet was intended to *replace* the Pontiac automobile.

Condition 2 of United States Fidelity and Guaranty's policy was meant to cover and protect the policy holder in the event of a replacement transaction such as we have here; otherwise, the word "replaces" need not have been used. Viewing the situation without regard to the accident of December 30, 1960, if one were to ask the status of the Chevrolet on that date, would not the realistic answer be that the Pontiac was being replaced by the Chevrolet, and that as soon as ownership could be perfected according to law that then the Chevrolet would be the vehicle covered by the United States Fidelity and Guarty's policy? That the Chevrolet was a *replacement* vehicle is supported by the fact that title to the automobile was subsequently transferred to Janet Trussell. The United States Fidelity and Guaranty Company, under the facts and circumstances of this case, is estopped to deny that the Chevrolet was a replacement car, and the insurance company has, by its agent's acts, waived any right to contend otherwise.

To summarize: The Court thus concludes that three policies of liability insurance provide coverage for the accident in which Thomas Trussell was allegedly involved on December 30, 1960. It is the holding of this Court that The Travelers Insurance Company, The Fidelity and Casualty Company of New York and the United States Fidelity and Guaranty Company shall prorate, pursuant to the "Other Insurance" provisions in all of their policies, the payment of any judgment which might be obtained by Thomas Brookfield, or others arising out of the accident of December 30, 1960. For the purpose of prorating, the Court finds that the liability coverages applicable to this situation are as follows: The Travelers Insurance Company, $500,000, bodily injury, each person; The Fidelity and Casualty Company of New York, $50,000, bodily injury, each person; and the United States Fidelity and Guaranty Company, $15,000, bodily injury, each person.

An appropriate order will this day be entered in accordance with the foregoing opinion.