THE BUCKEYE UNION CASUALTY CO., APPELLEE, *v.* ROYAL
INDEMNITY INS. CO. ET AL., APPELLANTS.*

(No. 1542—Decided February 28, 1963.)

*Messrs. Guarnieri & Secrest*, for appellee.

*Messrs. Pfau & Pfau*, for appellant Royal Indemnity Insurance Company.

*Mr. Comus M. Beard*, for appellant Columbia Casualty Company.

*Motion to certify the record overruled (38205), September 25, 1963.

**430**

Brown, P. J.  This is an appeal on questions of law from a declaratory judgment rendered by the Court of Common Pleas of Trumbull County upon an agreed statement of facts in an action brought by Buckeye Union Casualty Company against the Royal Indemnity Company and the Columbia Casualty Company.

"Agreed Statement of Facts.

"The facts here involve Jim Connell Chevrolet, Inc., an automobile dealer located at 14481 Euclid Avenue, Cleveland, Ohio, hereinafter referred to as Connell with garage liability policy with Royal Indemnity Company; Walter Green and his brother, Vincent Green, partners doing business under the name of Green's Used Cars at Akron, Ohio, and conducting a sales and service station in connection with their business, and hereinafter referred to as Green's with garage liability policy with Columbia Casualty Company; and Joseph Zumerling, d. b. a. Zum's Auto Sales, an automobile dealer located at 500 South Street, S. W., in Warren, Ohio, and hereinafter referred to as Zum's with garage liability policy with Buckeye Union Casualty Company.

"(1) On March 24, 1960, Connell purchased a 1957 Pontiac sedan used car from Joseph C. Jenkins, receiving a certificate of title therefor on the same date.

"(2) Green's previously had purchased used cars from Connell. On March 25, 1960 the Green brothers went to Connell and purchased two used cars, took delivery of the same, one car being a 1957 Pontiac sedan. They delivered to Connell a sight draft in payment for these cars in accordance with their usual practice.

"(3) On March 31, 1960 Connell duly endorsed the certificate of title to this automobile to Green's, properly notarized and delivered with it a sight draft to its Cleveland Bank (National City) for deposit to the credit of Connell's account. The sight draft was drawn on Green's and payable at the Barberton Branch of the First National Bank of Akron, and in due course the sight draft and duly notarized certificate of title were sent to the Barberton Branch of the First National Bank of Akron by the National City Bank of Cleveland.

"(4) Upon the payment of the draft the Akron bank would

and did deliver the properly assigned certificate of title to Green's and Green's representative so that a certificate of title could be secured by Green's.

"(5) For a fee, A-1 received said automobile from Green's for sale. Green's furnished A-1 with a power of attorney. A-1 really financed the sale from Connell to Green's.

"(6) A-1 sold and delivered possession of this car to Zum's on April 5. On April 8 A-1's representative lifted the sight draft at the Barberton bank and secured the assigned certificate of title from Connell to Green's. The certificate of title from Connell to Green's was dated April 12, 1960, and a subsequent certificate of title from Green's to Zum's was dated April 22, 1960.

"(7) On April 8, while the certificate of title to the car was still in the name of Connell, the car was actually in the possession of Zum's at Warren since Zum's had paid and received possession of the car from A-1 on April 5.

"(8) On April 8, while the car was in the possession of Zum's for sale on its used car lot, and after being washed, and while being driven by Will Rogers, an employee of Zum's, back upon the used car lot, it was alleged to be negligently operated so as to go over the public sidewalk and strike a pedestrian pinning him against an automobile passing on the street at said time, allegedly causing injuries and damage to the driver of said auto.

"(9) Action is pending in behalf of the driver of the automobile hereinbefore referred to, Ida Sleyzak vs. Joseph Zumerling, d.b.a. Zum's Auto Sales, in Case No. 69863 in the Court of Common Pleas of Trumbull County, Ohio, and Richard Del Vecchio is alleged to be making claim against Zum's.

"(10) Each of these casualty companies had issued and in force at the time this accident happened the standard form of garage liability policies.

"(11) Each policy contained the following provisions pertinent to the issues involved herein:

"'Insuring Agreements'

"'Coverage A—Bodily Injury Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sick-

ness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the hazards hereinafter defined.

" 'COVERAGE B—PROPERTY DAMAGE LIALIBITY: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the hazards hereinafter defined.

" 'DEFINITION OF INSURED: With respect to the insurance under coverages A, B, * * * the unqualified word "insured" includes the named insured and also includes: (1) * * * "and (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission."

" 'DEFINITION OF HAZARDS:

" 'DIVISION L. PREMISES—OPERATIONS—AUTOMOBILES.

" 'The ownership, maintenance or use of the premises for the purpose of an automobile sales agency, repair shop, service station, storage garage or public parking place, and all operations necessary or incidental thereto; and the ownership, maintenance or use of an automobile in connection with the above defined operations, and the occasional use for other business purposes and the use for nonbusiness purposes of (1) any automobile owned by or in charge of the named insured and used principally in the above defined operations, and (2) any automobile owned by the named insured in connection with the above defined operations for the use of the named insured, a partner therein, an executive officer thereof, or a member of the household of any such person.'

" 'CONDITIONS.'

" 'Other insurance—Coverages A, B, * * *: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss.' "

Under the stipulated facts and policies, the trial court held Buckeye Union Casualty Company had coverage for the reason that the car was in possession of its insured, Zum's Auto Sales,

and was being driven by one of Zum's employees, and the accident took place on its premises. We agree with this declaration.

The trial court held that Columbia Casualty Company had coverage because Zum's employee was driving same with the permission of A-1 Auction, agent of Green's Used Cars, its insured, and the operation of the car by Zum's employee was an operation necessary and incident to Green's Used Car Agency. We hold that the decision in *Brewer* v. *DeCant*, 167 Ohio St., 411, requires this finding. As between Green's and Zum's, the factual and policy situation are not distinguishable from *Brewer* v. *DeCant* except that the vendee of Green's happened to be another dealer.

The trial court held that the policy of Royal Indemnity Insurance Company, carrier for Jim Connell Chevrolet, Inc., also covered the accident and based this holding on the court's knowledge of the "general practice and usage of car dealers," saying that "it is a well-known fact that schemes (such as this) are resorted to by car dealers."

This holding of the trial court can not be justified. Plaintiff, appellee herein, makes the following remark in its brief:

"The facts in the instant case involve used car dealers who repeatedly conducted prior similar transactions wherein all parties concerned were aware of the fact that when the sight draft was covered by the money supplied by the purchaser at the auction, such purchaser was using the automobile owned by Connell Chevrolet and necessarily by implication with its permission."

Prior similar transactions were not stipulated as having occurred. No such admission is made in the pleadings. No such fact is evidenced by answers to interrogatories in the transcript. Since the case was submitted upon stipulation, we know of no way to justify the consideration by the court of practices, or prior similar transactions to impute knowledge to each of these dealers beyond his own sale.

Connell must be charged in some way with knowledge that Green intended a sale to Zum's through A-1 prior to receiving a certificate. In the absence of such knowledge the trial court could not find Zum's driver was driving as an incident to Connell's business, or with his implied permission. This seems to be recognized by: (1) The trial judge in his opinion which is

made a part of the entry; (2) counsel for the plaintiff in the language from their brief above quoted; and (3) counsel for defendant, appellant herein, Columbia Casualty Company, in its brief in the following language:

"The *practice was* for Green's to take the automobile or automobiles that they had agreed to purchase from Connell in Cleveland, Ohio, to Akron, Ohio, deliver the automobiles to A-1 Auto Sales, who would then have an auction, and upon the sale of those automobiles, and when A-1 received the purchase price on those sales, it would go to the Barberton Bank, pay the sight draft that Connell had attached to the certificate of title, obtain the executed certificate of title and then record it in the name of Green's and deliver it to the purchaser from A-1 Auto Sales.

"It is undisputed that Jim Connell Chevrolet, Green's and A-1 had done business on numerous occasions prior to the date of this accident, April 8, 1960, in the same manner that this transaction was carried out."

Since such knowledge or practice is not before us we need not speculate on its effect when present in other situations.

In the absence of these facts, Connell's policy covers Zum's only if the stipulation, the language of the policy, Section 4505.04, Revised Code, the Supreme Court's holding in *Garlick, Admr.,* v. *McFarland, a Minor,* 159 Ohio St., 539, and in *Brewer* v. *DeCant,* 167 Ohio St., 411, call for such a finding.

Ownership of the car is not important in determining coverage in this situation. This is clear from the language of the policy: Division L—Hazards: "Ownership, maintenance or use of an automobile in connection with the above defined operation." An automobile "used in connection with the above defined operation" is a covered automobile under the clear language, whether owned or not. A person using a covered automobile with the permission of the named insured is "an insured" as defined in the policy.

That ownership by the garage-dealer is not important in determining coverage was noted by Taft, J., in his concurring opinion in *Garlick, Admr.,* v. *McFarland, a Minor,* 159 Ohio St., 539, and by Judge Bell in *Brewer* v. *DeCant,* 167 Ohio St., 411, at page 413.

Ownership in the vendee would be a really important deter-

mination. If title, possession and control had passed to the vendee, it could no longer be said that the car was "used in connection with the operation" or "that the person using same did so with the *permission* of the named insured." The use is as of right thereafter, and the business purpose is accomplished.

Transfer of possession and control of an automobile incidental to the sales agency purposes is the factual basis for implying permission to use the automobile by the vendee while the transfer is incomplete. This implied permission results in coverage for the vendor under the very broad language of the omnibus clause in the standard garage owners' liability policy.

Since it is the transfer of possession and control in this often recurring fact situation that raises the implication, and since Connell did not transfer control or possession of this car to Zum, there is no factual basis for implied permisssion from Connell to Zum. Certainly the stipulation contains no facts which would make Green Connell's agent for that purpose.

The policy of the defendant Royal Indemnity Insurance Company issued to Connell as the named insured was, therefore, not in effect as to Zum or those beyond him.

The trial court's judgment to the contrary in this respect is reversed, and is affirmed in all other respects.

*Judgment reversed in part and affirmed in part.*

DONAHUE, J., concurs.

FRANCE, J., concurring in part and dissenting in part. I concur in that part of the opinion finding that the policy of Royal Indemnity Insurance Company does not extend coverage to Zum or Zum's washboy—in the absence of facts that Zum or the plaintiff in the pending or contemplated tort actions can supply. It should be clearly understood that since they are not parties to this action they are in no respect bound by the decision in the event, upon judgment, a supplemental petition were to be filed.

Coverage depends upon the concurrence of two elements specified in each policy:

1. Definition of Hazards

"Ownership, maintenance or use of an automobile in con-

nection with the above defined operations'' (*viz*, automobile sales agency).

2. Definition of Insured

''Any person while using an automobile covered by this policy, and any person legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission.''

In this case ownership is a factor as to Connell because, by the sweeping language of Section 4505.04, Revised Code, ownership was securely fastened on Connell for all purposes, however unrealistic this may seem. But ownership constituted only half the requisite for coverage and, as the majority opinion points out, lack of permissive use eliminates Zum or his washboy as an addiitonal assured under the policy.

I cannot agree with the statement that *Brewer* v. *DeCant*, 167 Ohio St., 411, requires the finding that coverage exists for Green's insurer, Columbia Casualty Company, or with the preliminary conclusion that the factual and policy situations here are not distinguishable from *Brewer* v. *DeCant*, except that the vendee of Green happened to be another dealer.

The first essential to coverage is ''ownership, maintenance or use in connection with an automobile sales agency.'' As to this facet, the court in *Brewer* v. *DeCant* was very careful to limit the first paragraph of its syllabus to the following:

''A provision in a standard garage liability insurance policy, issued to an automobile dealer, defining as one of the hazards covered the 'use of any automobile in connection with the * * * operations' of an automobile dealer extends to an automobile repossessed by a finance company and placed in the custody of such dealer for resale, even though the certificate of title thereto remains in the name of the person from whom the automobile was repossessed.''

This restricts its statement to the very limited class of sales before it in that case, and so do many of the exceedingly careful and guarded statements in Judge Bell's opinion. It is to be noted that in *Brewer* v. *DeCant* the sale was to one whom Section 4505.06, Revised Code, identifies as a general purchaser or user, not to another dealer.

I can agree that the delivery of possession of an automobile under agreement to sell, with concomitant receipt of the

entire purchase price of the sale, constitutes a use of the automobile in connection with the operations of an automobile sales agency. I do not perceive, however, that a subsequent user by the purchaser, in accordance with his own wishes, for his own purposes, and at his own discretion, particularly by a competing sales agency, necessarily or even logically, becomes a use in connection with the vendor's operations.

There are many reasons why this result may be argued in individual and specialized cases:

First: Since the need for a still undelivered certificate of title will bring the purchaser back to vendor's place of business he becomes a prospect for future sales, or for servicing on his car. This could well have been true in *Brewer* v. *DeCant* or in *United States Fidelity & Guaranty Co.* v. *Trussell* (W. D. Virginia), 208 F. Supp., 154, which follows and comments on it. It was certainly true in *Farm Bureau Mutual Automobile Insurance Co.* v. *Motorists Mutual Insurance Company,* 110 Ohio App., 12. Since Zum was a competitor of Green's and purchased the car through auction it is scarcely true in the instant case.

Second: Having the purchaser required to come back for a certificate of title will aid in the collection of any balance of purchase price due. This factor is recognized in *Randall Insurance Agency, Inc.,* v. *Burns,* 115 Ohio App., 397, 93 A. L. R. (2d), 1041 (coverage denied on other grounds), and in *Allstate Insurance Co.* v. *Hartford Accident & Indemnity Co.* (Missouri App.), 311 S. W. (2d), 41, but is scarcely a factor where, as here, the entire purchase price was paid prior to the vendee's accident-resulting use.

Third: The prompt sale and remission of purchase price to the one who (as prior vendor or principal) placed the car in the vendor's hands, without waiting for formalities of title documents, is simply good public relations and will aid in securing further profitable business from the same source. This reason was more than hinted at in *Brewer* v. *DeCant* and *United States Fidelity & Guaranty Co.* v. *Trussell, supra,* both of which cases involved doing business for a repossessing finance company which had taken credit paper from the vendor on previous sales of the same cars which were delivered to vendees. Certainly this reason has no application to the present factual situation.

Fourth: The law should presume that use by the purchaser is in the interest of the vendor, even if this is contrary to fact, in order to coerce the vendor into making immediate delivery of title documents, and to punish him by imposing vicarious tort liability if he does not. I would be quite sympathetic with this argument if imposition of such liability on Green were sought, but such is not the case. There is no attempt to make Green liable; on the factual situation presented Green would escape liability in any event. See *United States Fidelity & Guaranty Co.* v. *Trussell, supra; Eggerding* v. *Bicknell*, 20 N. J., 106, 118 A. (2d), 820. Just how the law coerces Green by letting him escape liability and imposing it, instead, on his liability carrier through the device of creating an additional assured in Green's policy is, to me, unexplained.

Fifth: It may also be argued that putting a purchaser in possession and collecting the money before delivery of title documents serves the vendor's business by enabling him to pay his own vendor. It is all too apparent that this is what happened in the rather scaly and shoestring operation of Green's. But this purpose ended with delivery and receipt of money. The use of the automobile thereafter was of no interest, concern or advantage to Green.

Sixth: Finally it might be argued that after the purchase and delivery of the car it would be impossible for the purchaser legally to use the vehicle, since registration in his name without title documents is impossible, and, therefore, to drive it he would have to use the vendor's license plates. This is the theory of a line of cases outside Ohio which so determines vendor's use or fixes the consequences of ownership on him by way of estoppel. *Switzer, Admx.,* v. *Merchants Mutual Casualty Co.*, 2 N. Y. (2d), 575, 141 N. E. (2d), 904; *Reese* v. *Reamore*, 292 N. Y., 292, 55 N. E. (2d), 35; *Eggerding* v. *Bicknell, supra*. Conceivably at one time this argument might have been valid in a limited number of car sale situations in Ohio, but with the enactment of Section 4503.182, Revised Code, which permits the obtaining of temporary registration by the purchaser without title documents, it has now lost validity. In any event, in this case Zum could always cover the automobile in question into his own dealer's plates, for ownership is not re-

quired in such case, only lawful possession.   Section 4505.30, Revised Code.

Many of the foregoing reasons for holding that the purchaser's operation constitutes the vendor's use in connection with his business could be argued with effect where there was a sale of a repossessed car, or any car, to a general user.   In the instant case, where the sale was to another dealer, through the medium of a used car auction, with purchase price fully paid, they utterly lack persuasiveness.   Conceding the soundness of public policy which underlies the decision in *Brewer* v. *DeCant*, as applied to the facts therein, there appears no reason why its doctrine should be stretched to cover the factual situation in the instant case.

It may be conceded that, under the third paragraph of the syllabus in *Brewer* v. *DeCant*, Zum's use of the automobile was with Green's permission (so far as Green had power to give it).   But permission alone is insufficient; it does not establish use in connection with Green's business.   Ownership was concededly not in Green's name, and the first requisite for coverage by Columbia Casualty fails.