PEFFER ET AL. *v.* KENNER ET AL.

(No. 265473—Decided June 5, 1969.)

Common Pleas Court of Summit County.

*Mr. John L. Wolfe*, for plaintiffs.
*Messrs. Olds & Olds*, for defendant Grange Mutual Cas. Co.
*Messrs. Buckingham, Doolittle & Burroughs*, for defendant Ohio Farmers Ins. Co.

EMMONS, J.   On February 4, 1966, C & D Auto Sales, Inc., a corporation, hereinafter referred to as C & D, was engaged in the used car business and on that date sold a 1957 Cadillac to one Ervin Davidson.   The payment for this car was financed by Davidson by means of a promissory note and a security agreement (chattel mortgage) in the amount of $728.28, payable in installments commencing March 17, 1966.

The promissory note was made payable to C & D, which company on February 4, 1966, assigned the same with recourse to the First National Bank of Akron.   The security agreement was also assigned to the bank on that date.   This agreement contained a provision that in the event of default, the secured party could repossess the vehicle and resell it at public or private sale.

Davidson defaulted in his payments, and on June 21, 1966, one Nathan Edelblute, Jr., an adjuster for the bank, along with an employee of C & D, repossessed the Cadillac at Davidson's home and the employee of C & D drove the car to the lot of C & D with permission of Edelblute and the same was there displayed for resale.

On the following day, Homer Kenner appeared on the lot of C & D and made arrangements to obtain the car from C & D for the sum of $200.00 down and the balance of about $295.00 to be paid in installments when the exact amount was to be determined.

At that time C & D did not have a certificate of title for the car, nor did the bank, the title still remaining in Davidson with a mortgage lien in favor of the bank.   Kenner signed both the note and security agreement in blank.

Ernie Hornack of C & D Auto Sales, Inc., requested

Kenner to sign a power of attorney for him to make an application for a ten-day tag and memorandum for certificate of title, which Kenner did, and Hornack procured a ten-day tag for Kenner at Sandy Beach Marina. Later in the day Kenner returned with the $200.00 and made the down payment, was given a ten-day tag, the car was serviced, and he was given the keys and drove away.

On the following day, while driving his lady friend to a movie, and after he had driven the car only for about fifteen miles from the time he took the car from the C & D lot he figured in an accident wherein Mary Peffer was seriously injured. These plaintiffs thereafter brought an action against Kenner and also notified the Ohio Farmer's Insurance Company (the company that insured First National Bank), and the Grange Mutual Insurance Company (which insured C & D) of the pendency of the action by serving each insurance company with a certified copy of the petition and summons.

There being no answer filed by Kenner, who was legally served with summons, a default was duly had against Kenner in the sum of $80,000.00 in favor of Mary Peffer and $10,000.00 in favor of Edwin Peffer, the plaintiffs in the action, and after 30 days, in conformity to law, a supplemental petition was filed against both insurance companies under Section 3929.06, Revised Code.

Thereafter this case came on for hearing on the supplemental petition and the answers of both insurance companies, and all parties having waived a jury, submitted the matter to the court sitting as a jury.

*What are the controlling provisions of the policy which the First National Bank of Akron had with The Ohio Farmers Insurance Company and what is the reasonable interpretation of the same?*

The pertinent provision of this policy is found under the heading of "Repossessed Automobile Coverage."

"It is agreed that such insurance is afforded by the policy for bodily injury liability and for property damage liability with respect to an owned automobile, applies with respect to any automobile while being repossesed by the

named insured, or while being maintained or used in connection with resale following such repossession, subject to the following provisions:

"EXCLUSION:—This endorsement does not apply to any automobile while being used for other business purposes or for personal pleasure or family purposes * * *"

As I find from the evidence, C & D sold the car in question to Davidson, who signed a note and security agreement to C & D for the balance of the purchase price. This note, with the security, was discounted at the First National Bank of Akron with recourse. Davidson defaulted in his payment and an employee of the bank and one of C & D Sales together repossessed the automobile and put it on the lot of C & D for the purpose of sale. First National at no time relinquished its right in the car. Even though C & D was responsible to pay this note to the bank upon default by Davidson, the bank had to perform a certain function to vest title in the bank, which in turn could be titled in C & D upon payment of the note—thus the car was still in a period of repossession.

Section 4505.10, Revised Code: "In the event of the transfer or ownership of a motor vehicle by operation of law * * * or repossession, is had upon default in performance of the terms of the security agreement as provided in Sections 1309.01 to 1309.50, inclusive, Revised Code, the clerk of court of common pleas of the county in which the last certificate of title to said motor vehicle was issued, upon surrender of the prior certificate of title * * * and upon payment of the fee prescribed in Section 4504.96, Revised Code, and presentation of an application for a certificate of title, may issue to the applicant a certificate of title to such motor vehicle. * * *"

The bank had a lot upon which it placed repossessed automobiles, but in this instance it saw fit to place the car on the C & D lot in order that there be a disposition of this car so that C & D could pay its obligation to the bank. Both parties had an interest in this transaction. One to be paid for the loan made to Davidson; the other to be put in a position to pay this loan.

Under the circumstances, the bank gave C & D per-

mission to drive this car for demonstration purposes and impliedly consented for the permittee of the C & D to drive until such a time as C & D and/or the bank found itself in a position to give a prospective purchaser legal title to this car.

*Brown* v. *Kennedy*, 141 Ohio St. 457: "Where an insurance policy covers one who uses the specified automobile with the permission of the named insured, the insurance company is not relieved of liability by reason of the fact that while the permittee was using the automobile, it was being driven by another at the time of an accident."

*Webb* v. *Grimm*, 116 Ohio App. 63: Syl. 4: "Where the named insured in a policy of automobile liability insurance authorizes another person to use the automobile for a particular purpose, such permittee has implied authority to extend coverage under the policy to a second permittee, if such use by the second permittee is in furtherance of the purpose of the original bailment and serves some purpose, benefit, or advantage of the first permittee."

In *North River Insurance Co.* v. *Connecticut Fire Insurance Co.*, 233 F. Supp. 31, it was held that the named insured need not know the identity of the driver of a repossessed car to imply its permission for use of the vehicle and that the insurer remains liable under the so-called "omnibus clause" where there is not more than a slight deviation from the permissive use granted by the insured.

(Also see *United States Fidelity & Guaranty Co.* v. *Trussel*, 208 F. Supp. 155), 7 American Jurisprudence 2d, Automobile Insurance, Section 116: "Many courts have gone a step further and held that where a named insured grants his permittee broad and unfettered dominion over his insured automobile, he also impliedly authorizes his permittee to allow a third person to use it, thus rendering the latter an additional insured."

Section 4509.51, Revised Code, provides: "Every owner's policy of liability insurance * * * (B) Shall insure the person named therein and any other person, using such motor vehicle with the express or implied permission of the insured against loss from liability imposed by law."

By the terms of Ohio Farmers Insurance Company's

policy, it is agreed that such insurance affords protection for bodily injury liability with respect to any automobile while being repossessed by the named insured or while being maintained or used in connection with resale following such repossession, however such protection does not apply to any automobile while being used for other business purposes or for personal pleasure or for family purposes.

What is the purpose or meaning of this exclusion? Does it refer to the personnel of the bank or to all persons generally?

This to me can only mean that once repossessed the automobile cannot be used to further the bank's other business or for the employees thereof to use it for their own personal or for their family purposes.

Counsel for the plaintiff stated in his brief: "With respect to the Ohio Farmers Insurance Policy, insuring the First National Bank of Akron, Ohio, it is, of course, apparent that the Bank repossessed the Davidson automobile under the provisions of its security agreement; that is, it did not steal the vehicle or possess it unlawfully."

"By leaving the vehicle at C & D Auto Sales, Inc., car lot, it was in effect, either reselling the car to C & D Auto Sales, Inc., or helping C & D Auto Sales, Inc., resell the car to satisfy the debt. Consequently, C & D Auto Sales, Inc., was permitted to drive Davidson's vehicle in connection therewith and in order to effect a sale of the car to a new purchaser who could thus relieve C & D Auto Sales, Inc., of the obligation to indemnify the Bank. Clearly, therefore, Kenner was operating the vehicle with the permission of the Bank and C & D Auto Sales, Inc., at the time of his accident with the plaintiff, Mary H. Peffer. It is not necessary that express permission be given by the Bank, because, obviously, when the Bank left the car at C & D's lot, it did not know who would be interested in purchasing the vehicle. The permission was general; that is, to any prospective purchasers, because it is well known that in order to sell a car it is necessary for the prospective purchaser to drive it. * * *"

"Thus, we do not need to strain the language of the

policy to find that Kenner was operating the repossessed Davidson vehicle with the permission of the First National Bank of Akron and that the Bank's insurance coverage with the Ohio Farmers Insurance Company provided coverage to the plaintiffs."

Here was Kenner, who under the law and for all intents and purposes could only have been driving the car as a prospective purchaser. He had driven about 15 miles in all when the accident happened and it matters not whether he and his girl friend were on their way to a movie or he was driving the car on a highway for trial purposes, for at the time of the accident neither C & D nor the bank were in a position to transfer title to Kenner, but both were in a legal position to grant Kenner the permission to drive this car by actual or implied consent.

It is apparent to me that it was just such a situation as this, or a somewhat similar one, that was the compelling force for the bank to take out repossession insurance and for which it paid the insurance company an added premium.

This court is of the opinion that the insurance coverage of the bank furnished by Ohio Farmers was such that under the proven circumstances afforded protection to Kenner, and that a judgment for the sum prayed for in the plaintiffs' petition be rendered against Ohio Farmers.

*What is the position of Grange Mutual Casualty Company (hereinafter referred to as Grange)?*

In the policy of insurance of Grange, the word garage is defined as "*an automobile sales agency*, repair shop, service station, storage garage, or public parking place." (Emphasis by the court.)

Under Section 2 of "Automobile Hazards" in said policy insurance is granted to a person using the car in connection with garage operations of any automobile which is neither owned nor hired by the named insured and persons insured under this policy are anyone using an automobile to which the insurance applies with permission of the named insured, providing such person's actual operation or other actual use thereof is within the scope of such permission.

The Grange Mutual Casualty Company policy which

insured the C & D Auto Sales, Inc., provides in part:

Part 1: Liability

Coverage A and B:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"A. bodily injury

"B. property damage

\* \* \* caused by accident and arising out of the garage operations' hazard \* \* \*

"'Garage' means an automobile sales agency \* \* \* storage garage or public parking place."

*Cook* v. *Kozell*, 176 Ohio St. 332, Syllabus: "Under a standard garage liability policy of insurance, issued to an automobile dealer who is the named insured, which policy contains an endorsement that reads, 'it is agreed that coverage under this policy is extended to include vehicles until delivery is made to either the original purchaser or persons so designated by the insured as the one for whom the delivery was intended,' coverage of a permissive user of a car owned by the automobile dealer is extended until such a time as delivery of the car is made by the automobile dealer to the purchaser and then such coverage ceases."

In this case it will be noted that Kozell had entered into a valid sales agreement with Euclid Ford Company, which company had legal title to this car; whereas in this case C & D had nothing but permission from the bank to find a prospective purchaser. The car was placed on the lot of C & D with the consent and acquiscence of the bank for C & D to find a prospective purchaser and thereafter arrange for C & D to be put in position to give a certificate of title. Kenner under no stretch of the imagination was a purchaser of this car, for again I quote, he was but at most a prospective purchaser.

The bank undoubtedly gave C & D permission to use this car to demonstrate it and with this permission given by the bank, it follows that C & D had implied permission to permit others to operate this car in the hopes of finally selling it,

6 Ohio Jurisprudence 2d, Automobile Insurance, Section 90, page 334: "An original permittee, whose authority from the named insured was silent as to his right to allow others to drive or use the automobile, is covered by the omnibus clause where he was using the car by riding in it while another was driving it with his consent, or where the operation by the second permittee is for the benefit or advantage of the first permittee, even though not in his presence, provided that the use to which the car was being put was within the scope of the initial permission. The words 'using,' 'used,' and 'actual use' do not have the limited meaning of 'operating,' 'operated,' and 'actual operation' and a car is used by a person whether he is operating it personally or through the services of another."

Grange Mutual contends that its coverage does not apply because of Part 1—Liability—

"(iii) any person or organization other than the named insured with respect to an automobile * * * owned by such person or organization or by a member (other than the named insured) of the same household, or * * * possession of which has been transferred to another by the named insured pursuant to an agreement of sale. * * *"

Section 4505.03, Revised Code, provides:

"No person, except as provided in Section 4505.05, Revised Code (which does not apply in this instance), shall sell or otherwise dispose of a motor vehicle without delivering to the purchaser or transferee thereof a certificate of title with such assignment thereon as is necessary to show title in the purchaser nor shall any person, except as provided in Section 4505.11, Revised Code (which is not applicable), purchase or otherwise acquire a motor vehicle without obtaining a certificate of title for it in his name in accordance with Sections 4505.01 to 4505.19, inclusive, Revised Code."

In *Brewer* v. *De Cant*, 167 Ohio St. 111, Justice Bell, on page 143 stated:

"Here the finance company had placed this automobile in the custody of Gingrich for the purpose of resale. The dealer thus had charge and control thereof and was the

only person with authority to permit the use of it by anyone. To say that Gingrich undertook the sale of the car as a courtesy to the finance company alone and without any thought for the furtherance of its own business is to blink one's eyes at the reality of the situation.''

The C & D Auto Sales did not have a certificate of title to this car nor did the First National Bank, the same still being in the name of Davidson, the original purchaser. C & D was not in a position to enter into a sales agreement with Kenner for it could not perform. To recognize such an agreement would be to sanction an illegal transaction since such is prohibited by Section 4505.03, Revised Code.

*Brewer* v. *De Cant* (quoted supra):—In this case Gingrich was regularly engaged in the business of selling automobiles. It sold a certain automobile to one Armitage, who executed a chattel mortgage thereon in favor of Commercial Credit Company. When Armitage was unable to make the payments on the note secured by a chattel mortgage on the car, Commercial repossessed the car and placed it on Gingrich's lot for resale. Commercial did not obtain a repossession title and at all times the title to the car remained in Armitage.

Gingrich entered into negotiations for the purchase of said automobile with one DeCant as a result of which DeCant contracted to buy the car in question and traded his Nash automobile in as a partial payment on the repossessed car. DeCant signed a power of attorney authorizing Gingrich to sign the application for title, arrange for the transfer of the chattel mortgage and took possession of said repossessed car.

Within a month this car, being driven by DeCant, was involved in an accident and as a result of which plaintiff was injured. Plaintiff brought suit against DeCant and received a default judgment. Plaintiff then filed a supplemental petition against Universal Underwriters Insurance Company.

''Syllabus: A provision in a standard garage liability insurance policy, issued to an automobile dealer defining as one of the hazards covered the 'use of any automobile

in connection with the * * * operations' of an automobile dealer extends to an automobile repossessed by a finance company and placed in the custody of such dealer for resale, even though the certificate of title thereto remains in the name of the person from whom the automobile was repossessed.''

''Syllabus 2: Under the Ohio Certificate of Title Act, a change in ownership of an automobile is not consummated until a Certificate of Title is issued in the name of the purchaser.''

''Syllabus 3: Where a person contracts to buy an automobile and takes possession thereof from an automobile dealer and uses the automobile, such use is a use with permission of the dealer until such time as a Certificate of Title thereto is issued to the purchaser.''

As was expressed by counsel for plaintiffs, the *DeCant case* is distinguished from the *Kozell case* and that the *DeCant case* is well within the boundaries of this case. I therefore find that the prayer of the plaintiffs be granted as to Grange Mutual Casualty to the extent of the limits of its policy.